UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PATRICK ALEXANDER,

                              Plaintiff,                      9:17-cv-00309 (BKS/CFH)

v.

Correction Officer JASON HANSON,

                              Defendant.
_____

**Appearances:**

*For Plaintiff:*
Leo Glickman
Stoll, Glickman & Bellina, LLP
5030 Broadway, Suite 652
New York, NY 10034

*For Defendant:*
Nicholas L. Zapp
Ryan T. Donovan
Harris, Conway & Donovan, PLLC
50 State Street, 2nd Floor
Albany, NY 12207

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.  INTRODUCTION

Plaintiff Patrick Alexander brings this action under 42 U.S.C. § 1983 against Defendant Correction Officer Jason Hanson. (Dkt. No. 57). Following extensive motion practice, one claim remains for trial: Plaintiff's claim that Defendant violated his Eighth Amendment rights in the aftermath of David Sweat and Richard Matt's escape from Clinton County Correctional Facility. *See Alexander v. Cuomo ("Alexander I")*, No. 17-cv-309, 2018 WL 2041576, 2018 U.S. Dist. LEXIS 219712 (N.D.N.Y. Feb. 26, 2018) (motion to dismiss); *Alexander v. Racette ("Alexander*

*II"*), No. 17-cv-309, 2019 WL 121670, at *1, 2019 U.S. Dist. LEXIS 2056, at *1 (N.D.N.Y. Jan. 7, 2019) (motion to dismiss second amended complaint); *Alexander v. Racette ("Alexander III")*, No. 17-cv-309, 2020 WL 5802273, 2020 U.S. Dist. LEXIS 178971 (N.D.N.Y. Sept. 29, 2020) (summary judgment). Plaintiff asserts that Defendant subjected him to excessive force and failed to intervene to prevent the use of excessive force. Presently before the Court are the parties' motions in limine. (Dkt. Nos. 115, 116). They are fully briefed. (Dkt. Nos. 121, 122). The Court heard oral argument on the motions at the October 4, 2021 final pretrial conference.

## II. DISCUSSION

### A. Excessive Force Against Other Inmates

Plaintiff asserts that testimonial evidence by Luis Zenon, Paul Davila, and Dupreme Washington regarding "other honor block inmates being assaulted in the immediate aftermath of the Clinton escape should be admitted" under Federal Rules of Evidence 401, 403, 404(b) (other act evidence), and 406 (organizational habit or routine practice). (Dkt. No. 116, at 2). Plaintiff argues that such testimony has "a tendency to make the allegation of assault more probable, since the use of assault for intimidation purposes was pervasive in this one specific part of the prison in one limited period of time, the immediate aftermath of the escape." (*Id.* at 2–3). Defendant opposes Plaintiff's motion and responds that any testimony by these individuals would be "highly prejudicial and speculative," and "has nothing to do with Defendant Jason Hanson and the alleged incident that occurred on June 6, 2015." (Dkt. No. 122, at 4).

#### 1. Summary of Proffered Testimony

Plaintiff expects that Zenon and Davila will testify about "inmates being subjected to assaults including the prevention of normal breathing by correction officers against other inmates in the immediate aftermath of the escape," (Dkt. No. 117, at 1), and that Washington will testify

2

about "inmates being subjected to assaults and . . . the injuries that Plaintiff suffered," (Dkt. No. 117, at 1; Dkt. No. 124). In a letter, Plaintiff outlined the testimony of Davila as follows:

> Paul Davila was a porter in the Honor Block and was housed on the first floor of the block not far from the porter's closet where Mr. Alexander was interrogated and assaulted. Mr. Davila will testify to his knowledge of the pervasive assaults that were occurring against honor block inmates, including himself. Mr. Davila was interrogated and assaulted inside the porter's closet like Mr. Alexander and was suffocated like Mr. Alexander.

(Dkt. No. 124, at 1). In the same letter, Plaintiff also summarized Washington's testimony:

> Dupreme Washington was on the Honor Block when the escape from Clinton Correctional Facility occurred. His cell was next to Patrick Alexander's. In the aftermath of the discovery of the escape, he could hear, and will testify to, numerous inmates being taking for interviews and personally heard scuffles breaking out in the course of those interviews while officers yelled "stop resisting" and words to that effect. He also saw Patrick Alexander return to his cell after he was interrogated and observed injuries on him.

(*Id.*). At the hearing, in response to questioning from the Court, Plaintiff's counsel proffered the following additional facts. Both Davila and Zenon were assaulted and choked on June 6; a CIU officer and non-CIU officers, who were not wearing name tags, were involved in Davila's assault; Davila was suffocated with an officer's hands over his mouth and nose to obstruct his breathing and mouth; and Zenon saw more than one other inmate being assaulted and choked that day.

The Court notes that the summary judgment record contains the following statements from Davila and Washington. Davila wrote:

> After the escape, I was taken to be interrogated inside an A block control room. The control room is plainly visible from the corridors of some of the companies in A block. I was suffocated and beaten during the interrogation. I was then taken back to my cell. I was

> taken for a second interrogation in the center room.[1] I was again suffocated and beaten. I was again taken back to my cell.
>
> . . .
>
> I know other offenders were beaten like me because I could see some were injured and they told me while we were in our cells at Clinton. The beatings were open and obvious to people who visited the block. It was common knowledge among prisoners, prison officials, and outsiders who visited.

(Dkt. No. 89-5, at 1). Washington provided the following statement:

> During the evening after the escape (Saturday), I heard numerous inmates be taken from their cells to interviews. Most times, I could hear a scuffle break out with the inmate saying words to the effect of "my hands are on the wall," and "I'm not resisting." One of the inmates I heard was Patrick Alexander.
>
> My cell was next to Patrick Alexander's. When he returned from the interview I could see red marks and bruising on his face. His injuries were clearly visible.
>
> I was interviewed that night but was not assaulted.

(Dkt. No. 89-4, at 1).

### 2. Direct Evidence Based on Personal Knowledge

To the extent Washington, whose cell was next to Plaintiff's, has personal knowledge of the circumstances under which Plaintiff was taken from his cell and how Plaintiff appeared when he returned to his cell on June 6, 2015, after the alleged interrogation and excessive force at issue in this case, his testimony is admissible. *See FloodBreak, LLC v. Art Metal Indus., LLC*, No. 18-cv-503, 2020 WL 6060974, at *8, 2020 U.S. Dist. LEXIS 189680, at *22 (D. Conn. Oct. 13, 2020) ("The relevant question governing admissibility is . . . whether [the witness] had "personal knowledge." (citing *U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3*, 2006

---

[1] In the letter-proffer detailed above, Plaintiff indicates that Davila will testify that he was assaulted in the "porter's closet," like Plaintiff. (Dkt. No. 124, at 1).

WL 2136249, at *11, 2006 U.S. Dist. LEXIS 52870, at *31–32 (S.D.N.Y. Aug. 1, 2006))); *see* Fed. R. Evid. 602. Washington's testimony regarding his observation of what he saw or heard as Plaintiff was being taken from his cell and how Plaintiff appeared when he returned to his cell is directly relevant to disputed issues in this case, including whether Plaintiff's face was "slammed" into bars or pipes on the wall of the interview room and whether he was struck in the face, neck, and body during the interview, (Dkt. No. 80-7, at 58–59, 69). *See* Fed. R. Evid. 401(a) ("Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence."). However, the remainder of Washington's testimony, and the testimony of Zenon and Davila, concern the circumstances of other inmates being taken from their cells, their own interviews, and the other beatings allegedly taking place at Clinton. (Dkt. Nos. 89-4 to 89-6). The Court must therefore evaluate whether this evidence is admissible, as Plaintiff argues, as "other act" evidence under Rule 404(b) or organizational habit evidence under Rule 406.

### 3. Federal Rules of Evidence 404(b) and 406

Federal Rule of Evidence 404(b) states in relevant part that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character" but that it "may be admissible for another purpose, such as proving motive," "intent," or "plan." Fed. R. Evid. 404(b).[2] The Second Circuit "follows the 'inclusionary' approach, which admits all 'other act' evidence that does not serve the sole purpose of showing the defendant's bad character and that is neither overly prejudicial under Rule 403 nor irrelevant under Rule 402." *United States v.*

---

[2] Although Plaintiff cites Rule 404(b), the inmates' proposed testimony it is not clear that it constitutes Rule 404(b) evidence as it concerns the actions of third parties—not Defendant Hanson. The Court utilizes Rule 404(b) here, to the extent it provides useful guidance but notes that its admissibility conclusions ultimately rest on Rule 403.

5

*Curley*, 639 F.3d 50, 56 (2d Cir. 2011) (citing *United States v. Pascarella*, 84 F.3d 61, 69 (2d Cir. 1996)). To determine whether to admit Rule 404(b) evidence, the court should consider whether: "(1) the prior [act] evidence [is being] 'offered for a proper purpose'; (2) the evidence [is] relevant to a disputed issue; (3) the probative value of the evidence [is] substantially outweighed by its potential for unfair prejudice pursuant to Rule 403; and (4) [there is] an appropriate limiting instruction." *United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009) (quoting *Huddleston v. United States*, 485 U.S. 681, 691–92 (1988)).

          a.        **Evidence that Hanson Was Involved in the Alleged Assault**

The Court concludes Zenon, Davila, or Washington's testimony regarding other assaults is not admissible as evidence that Defendant Hanson was involved in the alleged assault of Plaintiff. Here, the "other act" evidence Plaintiff seeks to admit concerns the actions of *non-party officers*; Plaintiff's counsel acknowledged at the hearing that Zenon, Davila, and Washington do not have any evidence that Defendant Hanson was involved in any alleged excessive use of force. While "[e]vidence regarding non-party co-conspirators is admissible against a party co-conspirator," *Davidson v. Scully*, 148 F. Supp. 2d 249, 253 (S.D.N.Y. 2001) (citing *United States v. Nixon*, 418 U.S. 683, 701 (1974)), Plaintiff has not proffered a sufficient showing that Defendant Hanson was a member of any conspiracy, *see id.* (evidence of third-party's bad act "is only admissible" against the defendant "upon a sufficient showing, by independent evidence, of a conspiracy among one or more other defendants" (quoting *Nixon*, 418 U.S. at 701)). In any event, "[i]n admitting 404(b) evidence of any kind a district court must still assess the probative value of the evidence relative to its risk of prejudice," *United States v. Mustafa*, 753 F. App'x 22, 37 (2d Cir. 2018), and here the danger of unfair prejudice or misleading the jury substantially outweighs its probative value as to the issue of whether Defendant Hanson committed the alleged assault.

6

The absence of detail about the individuals involved reduces the probative value of such evidence because it will not assist the jury in determining whether Defendant Hanson used force in conducting inmate interviews. The lack of detail increases the danger of unfair prejudice and misleading the jury into believing that the use of force by other officers is a basis for concluding Defendant Hanson used excessive force against Plaintiff. *See Provost v. City of Newburgh*, 262 F.3d 146, 163 (2d Cir. 2001) (affirming district court's refusal to allow at testimony "describing the alleged abuse of other detainees that [the plaintiff] witnessed while incarcerated at the . . . police station," explaining that the "district court acted well within its 'broad discretion' in concluding that the disputed testimony was either irrelevant to the plaintiff's claims—there is no evidence that any of the defendants took part in the alleged misconduct—or that any relevance was 'substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury'") (internal citation omitted) (first quoting *Gentile v. County of Suffolk*, 926 F.2d 142, 151 (2d Cir. 1991); and then quoting Fed. R. Evid. 403)). Accordingly, the Court concludes that any probative value of testimony about other inmates' injuries or incidents of alleged excessive force on the issue of whether Defendant Hanson assaulted Plaintiff is substantially outweighed by the danger of unfair prejudice or misleading the jury.

Plaintiff's argument that this evidence is admissible because it "tends to show an organizational *modus operandi*,"[3] (Dkt. No. 124 (citing Fed. R. Evid. 406)), is likewise

---

[3] To the extent Plaintiff intends to argue that because Davila, Zenon, and Plaintiff's alleged interviews and assaults are similar, the inmate testimony constitutes modus operandi evidence under Rule 404(b), the argument fails. "Rule 404(b) permits evidence of similar acts to prove a 'signature crime,' *i.e.*, a *modus operandi* where the crimes are 'so nearly identical in method as to ear-mark them as the handiwork of the accused.'" *United States v. Mills*, 895 F.2d 897, 907 (2d Cir. 1990) (quoting 2J. Weinstein & M. Berger, Weinstein's Evidence, ¶ 404[16], at 404–127 (1985)). But here Plaintiff does not contend that the alleged assaults of Davila or Zenon are "the handiwork" of Defendant Hanson, *Mills*, 895 F.2d at 907, or that Defendant Hanson was even involved in the other alleged assaults. And to the extent Plaintiff argues the similarities show a common plan, he has failed to proffer sufficient evidence of such a plan. "Where evidence is offered to establish a common scheme or plan, such evidence must demonstrate either a 'connected or inseparable transaction' or 'a continuing scheme or conspiracy.'" *United States v. Martoma*, No. 12-cr-973, 2014 WL 31213, at *4, 2014 U.S. Dist. LEXIS 1564, at *13 (S.D.N.Y. Jan. 6, 2014) (quoting *United States v. O'Connor*,

7

unavailing. "Rule 406 is not intended to prove guilt by association" and evidence of the "practices of an organization is not admissible to prove the conduct of specific members of the organization." 2 Weinstein's Fed. Evid. § 406.03[3] (2021); *see also United States v. Angelilli*, 660 F.2d 23, 41 (2d Cir. 1981) (finding that the district court erred in admitting evidence of the existence of a custom and practice among city marshals to demand a bribe when engaging in property executions under Rule 406, against the individual defendants, explaining that "it would defy the principle of the individuality of guilt to hold that a defendant's mere membership in an organization practicing a particular type of crime could be used to show that the defendant himself committed such a crime"); *Holmes v. City of Chicago*, No. 09-cv-2481, 2016 WL 6442117, at *14, 2016 U.S. Dist. LEXIS 150991, at *44–45 (N.D. Ill. Nov. 1, 2016) (rejecting the plaintiff's argument that evidence of the "customary practices" of the police team in "conducting solicitation sting operations" was admissible, explaining that even if the evidence was sufficient to show "an organization's routine practice" under Rule 406, "[i]t is Defendant's individual conduct that is at issue in this case, not the practice of the police team, and a group's practice cannot be attributed to an individual member"). In addition, as discussed, the probative value of this evidence, offered for the purpose of showing that Defendant Hanson used involved in the use of excessive force against Plaintiff, is substantially outweighed by the danger of unfair prejudice and misleading the jury.

---

580 F.2d 38, 41 (2d Cir. 1978)). While there is evidence there were many and repeated interviews of inmates at Clinton following the escape, Plaintiff has not demonstrated a continuing scheme or conspiracy among DOCCS employees, or others, with respect to how those interviews were conducted. Moreover, as discussed, without any factual detail concerning the officers involved, any probative value is substantially outweighed by the danger of unfair prejudice.

### b. Evidence that the Assault Described by Plaintiff Occurred

However, at the pretrial hearing, defense counsel stated that Defendant Hanson disputes whether Plaintiff was assaulted. The Court therefore considers whether Davila and Zenon's proffered testimony may be probative of whether the alleged assault and suffocation took place, and admissible for that limited purpose. Davila and Zenon's proffered accounts contain marked similarities to Plaintiff's expected testimony: they will all testify that they were assaulted and their breathing was restricted (through choking or suffocation) on June 6, 2015, during interviews in or near the porter's closet, by officers who were not wearing name tags. *See O'Connor*, 580 F.2d at 43 ("[W]e have said that corroboration is a legitimate use of other crimes evidence, the corroboration must be direct and the matter corroborated . . . significant.") (quotation marks omitted). To minimize the danger of unfair prejudice, upon admission of this evidence, the Court will provide a limiting instruction, advising the jury that there is no evidence that Defendant Hanson was involved in the alleged assaults of Davila or Zenon and that they are only to consider this evidence in deciding whether the alleged assault took place as Plaintiff has alleged.[4] *See United States v. Downing*, 297 F.3d 52, 59 (2d Cir. 2002) (noting that Rule 404(b) prejudice "can be cured with proper instructions, and juries are presumed to follow their instructions") (internal quotation marks omitted). The Court therefore concludes that Davila and Zenon's testimony, which will be limited to the above facts, is offered for a proper purpose and relevant to a disputed issue—whether the alleged assault and suffocation occurred and that with a proper limiting instruction, the probative value of the testimony substantially outweighs the danger of unfair prejudice. Accordingly, Washington may testify as to his personal knowledge of Plaintiff leaving and returning to his cell; any testimony regarding other inmates or his own

---

[4] The parties are, of course, free to propose a limiting instruction.

interview, however, is precluded. Davila and Zenon may testify regarding their own experiences during their interviews on June 6, 2015, and Zenon may testify regarding other choking assaults he witnessed.

### B. Street Clothes and Restraints During Trial

Plaintiff seeks permission to dress in street clothes during the trial and to appear before the jury without handcuffs, other restraints, or "any overly conspicuous involvement of law enforcement." (Dkt. No. 116, at 3–4). Plaintiff's motion regarding street clothes is granted and the Court will discuss Plaintiff's request regarding restraints on the morning of trial, after the Court has had an opportunity to confer with the court security officers and the corrections officers who bring Plaintiff to trial.

### C. Prior Conviction

Plaintiff seeks to preclude Defendant from introducing evidence of his prior murder conviction, which "occurred more than seventeen years ago," under Rule 609.[5] (Dkt. No. 116, at 4–8). At the hearing, defense counsel stated that he only sought to introduce evidence that the Plaintiff has a 2004 felony conviction for which he was sentenced to twenty years to life.

Rule 609(a)(1) of the Federal Rules of Evidence provides that, in a civil case, "subject to Rule 403," evidence of a prior conviction "must be admitted" to impeach a witness where the conviction was "for a crime that . . . was punishable . . . by imprisonment for more than one year." Fed. R. Evid. 609(a)(1)(A). "The Rule requires district courts to admit the name of a conviction, its date, and the sentence imposed unless the district court determines that the probative value of that evidence 'is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of

---

[5] Plaintiff also argues that his conviction is inadmissible under Rule 404(b), (Dkt. No. 116, at 4–5), but as Defendant only seeks admission under Rule 609, (Dkt. No. 122, at 6), the Court does not address Rule 404(b).

time, or needless presentation of cumulative evidence.'" *United States v. Estrada*, 430 F.3d 606, 620–21 (2d Cir. 2005) (quoting Fed. R. Evid. 403).

The applicability of this rule is limited by Rule 609(b), which provides that "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later," "[e]vidence of the conviction is admissible only if . . . its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1). As Plaintiff has not been released from confinement for his murder convictions, the limitation in Rule 609(b) concerning older convictions is inapplicable. Accordingly, the Court must balance the probative value of introducing evidence of Plaintiff's murder conviction against its prejudicial effect.

Here, Plaintiff's credibility is a central issue in this case because the jury will not only be required to consider two contradictory versions of the interviews Defendant Hanson purportedly conducted but will be required to consider Plaintiff's credibility in describing the alleged perpetrator of the alleged excessive force. Although "Rule 609(a)(1) presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully," *Estrada*, 430 F.3d at 617, "all Rule 609(a)(1) felonies are not equally probative of credibility," *id.* at 618. Thus, "[d]istrict courts under Rule 609(a)(1) are to consider the relative probative worth of a witness's specific offenses of conviction, however, in light of the factors listed under Rule 403, when determining whether to admit evidence of those convictions for impeachment purposes. *Id.* at 617. Defendant does not seek to introduce the name of Plaintiff's murder conviction, only the fact that it is a felony conviction. Indeed, as a crime of violence, a murder conviction does not necessarily shed light on Plaintiff's honesty or veracity. *Id.* at 617–18 (noting that courts have recognized a distinction "between crimes that reflect adversely on a person's integrity, and which

11

therefore bear on honesty—such as those involving deceit, fraud, and theft—and acts of violence, 'which may result from a short temper, a combative nature, extreme provocation, or other causes, [and] generally have little or no direct bearing on honesty and veracity.'" (quoting *Gordon v. United States*, 383 F.2d 936, 940 (D.C. Cir. 1967)). The Court therefore concludes that the fact of Plaintiff's felony conviction is relevant and, without the name of the conviction, only minimally prejudicial—the jury already will know that Plaintiff was convicted of a crime, by the very nature of his claims against a correction officer. *See Espinosa v. McCabe*, No. 10-cv-497, 2014 WL 988832, at *3–4, 2014 U.S. Dist. LEXIS 31741, at *16 (N.D.N.Y. Mar. 12, 2014).

In addition, the date of Plaintiff's conviction, 2004, (Dkt. No. 116, at 4), may be relevant to the jury's assessment of how much weight to accord this impeachment evidence, and the Court does not find any danger of unfair prejudice to Plaintiff from that evidence that outweighs its probative value. Similarly, the Court can identify no unfair prejudice that might outweigh the probative value of the term of imprisonment which may assist the jury in considering the impact of the felony convictions on his credibility. Thus, the Court concludes that evidence of the fact of Plaintiff's incarceration on the basis of a felony conviction in 2004, and the term of imprisonment, "twenty years to life," (Dkt. No. 116, at 4), is admissible, but that the name and nature of the crime is not admissible. *See, e.g.*, *Lewis v. Velez*, 149 F.R.D. 474, 483 (S.D.N.Y. 1993) ("[W]hile the fact that Mr. Lewis is a convicted felon serving a sentence of eleven years to life may be elicited, the charge on which he was convicted may not.").

### III. CONCLUSION

For these reasons, it is hereby

**ORDERED** that the parties' motions in limine (Dkt. Nos. 115, 116) are **GRANTED in part and DENIED in part**.

**IT IS SO ORDERED.**

Dated: October 8, 2021
      Syracuse, New York

Brenda K. Sannes
U.S. District Judge